# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| MICHELLE HARGIS, | |
| **Plaintiff,** | **8:17CV3052** |
| **vs.** | |
| MEGAN J. BRENNAN, Postmaster General, in her official capacity; | **MEMORANDUM AND ORDER** |
| **Defendant.** | |

This matter is before the Court on the Motion for Summary Judgment, ECF No. 46, filed by Defendant Megan Brennan, the United States Postmaster General. For the reasons stated below, the Motion will be granted.

## BACKGROUND

Unless otherwise indicated, the following facts are those stated in the parties' briefs, supported by pinpoint citations to admissible evidence in the record, in compliance with NECivR 56.1[1] and Federal Rule of Civil Procedure 56.[2]

On February 26, 2001, Plaintiff Michelle Hargis began work at the United States Postal Service Processing and Distribution Center in Omaha, Nebraska (USPS). On May

---

[1] *See* NECivR 56.1(b)(1):

The party opposing a summary judgment motion should include in its brief a concise response to the moving party's statement of material facts. The response should address each numbered paragraph in the movant's statement and, in the case of any disagreement, contain pinpoint references to affidavits, pleadings, discovery responses, deposition testimony (by page and line), or other materials upon which the opposing party relies. Properly referenced material facts in the movant's statement are considered admitted unless controverted in the opposing party's response.

[2] Where Hargis disputes certain stated facts solely on the basis that she lacks sufficient information, she has failed to dispute that fact for purposes of Rule 56. *See infra* Standard of Review (quoting *Briscoe v. Cnty. of St. Louis*, 690 F.3d 1004, 1011 (8th Cir. 2012) (The nonmoving party "must come forward with specific facts showing that there is a genuine issue for trial.")).

17, 2014, USPS promoted her to Supervisor of Distribution Operations (SDO). Her regular work schedule was Tuesday through Saturday from 6:00 a.m. to 3:00 p.m., with Sundays and Mondays off. Hargis was generally responsible for "[s]upervis[ing] a medium group of employees engaged in mail processing and distribution activities." Job Description, ECF No. 47-6, Page ID 314. Under USPS's management hierarchy, Hargis and other SDOs reported directly to the Managers of Distribution Operations (MDOs); the MDOs reported to the senior MDO; and the senior MDO reported to the Senior Plant Manager.

USPS generally assigned employees to one of three shifts: Tour 1 (10 p.m. to 6:30 a.m.); Tour 2 (7:30 a.m. to 4:30 p.m.); and Tour 3 (4:00 p.m. to 1:00 a.m.). At some point following her promotion, Hargis was assigned to Tour 2. In September 2015, the Senior Plant Manager, Pamela Cook, decided to reevaluate the number of SDOs assigned to the Tour 2 and Tour 3 shifts. At the time, Tour 3 had fewer SDOs than Tour 2, and Cook believed that Tour 3 needed more SDOs than Tour 2. Thus, sometime between September and November 2015, Cook decided to reassign one SDO from Tour 2 to Tour 3, and another SDO from Tour 2 to a Tour 2-Tour 3 split shift. Cook also decided that the two most recently promoted Tour 2 SDOs would be selected for reassignment.[3]

In November 2015, Cook told Hargis that because she was the second most recently promoted SDO Hargis had the option of taking either the Tour 3 assignment or the Tour 2-Tour 3 split shift assignment. Hargis Dep., ECF No. 52-1, Page ID 481, 20:25. Hargis chose the split shift but objected to the reassignment because she was a single

---

[3] Hargis does not dispute that Cook decided to reassign the two most recently promoted SDOs, but she contends that selecting the two most recently promoted Tour 2 SDOs was inconsistent with USPS policy. Pl.'s Br., ECF No. 51, Page ID 451.

parent to her nine-year-old child and was concerned about the effect Tour 3 shifts would have on her childcare arrangements. The most recently promoted Tour 2 SDO, Komlan Amegbeto, was reassigned to Tour 3. On the split shift, Hargis was to work the Tour 2 shift on Tuesdays and Wednesdays and the Tour 3 shift on Thursdays, Fridays, and Saturdays. She would continue to have Sundays and Mondays off. According to Hargis, when she objected to the reassignment, Cook stated "go ahead and file an EEO because she [Cook] never loses." Hargis Dep., ECF No. 52-1, Page ID 489-90.

Hargis also claims that, at some point, Mike Dornbusch, the senior MDO at the time, told Hargis that she would remain on Tour 2 permanently.[4] Cook discussed the reassignment with Hargis again on January 15, 2016, and told Hargis that she would be assigned the split shift despite her childcare concerns. Hargis reasserted her opposition during that discussion. On January 23, 2016, Hargis filed an Information for Pre-Complaint Counseling, ECF No. 47-7, Page ID 353, with the United States Postal Service Equal Employment Opportunity Office (EEOO) wherein she complained about Cook's decision to assign Hargis the split shift. *Id.* In a letter to Hargis dated February 10, 2016, Cook confirmed that she was reassigning Hargis to the split shift, but also informed Hargis that the reassignment was being postponed until March 26, 2016, to give Hargis additional time to make childcare arrangements. Until then, Hargis was to remain on Tour 2. Hargis's reassignment was further postponed to June 11, 2016, because she served

---

[4] Brennan objected to this statement of fact arguing it is based on inadmissible hearsay evidence. *See* Hargis Dep., ECF No. 52-1, Page ID 492 (testifying "I asked him [Dornbusch] if I was going to stay on Tour 2, and he told me I was"). Because it is not clear that this statement is offered for the truth of the matter asserted, and because Brennan did not otherwise dispute this statement of fact, the Court will treat it as an undisputed fact. Yet the Court finds this fact is not material.

a temporary detail as Acting Supervisor of Customer Service from March 26, 2016, to June 10, 2016. Hargis continued to object to her upcoming reassignment and, on April 17, 2016, she filed a formal Complaint of Discrimination, ECF No. 47-7, Page ID 357, claiming Cook discriminated against her, based on her sexual orientation, and retaliated against her for contacting the EEOO. Hargis supplemented her complaint on August 29, 2016. ECF No. 47-7, Page ID 361. On June 11, 2016, Hargis began working the split shift.

Throughout July and August 2016, Tour 2 occasionally had unfilled SDO shifts on days when Hargis was scheduled to work on Tour 3 and on Hargis's scheduled days off. The MDOs were responsible for making sure their Tours were adequately staffed, and, generally, when Tour 2 had unfilled SDO shifts, the MDO had a Tour 1 or Tour 3 SDO cover the unfilled shift. Sometimes, other MDOs covered the unfilled shifts as well. USPS often had to compensate the employee who covered the unfilled shift with overtime pay. Although Lance Abbott, the Tour 3 MDO, and George Jarrett, the Tour 2 MDO, allowed Hargis to cover some of the unfilled Tour 2 shifts in August, Hargis complained that she was not permitted to cover other unfilled Tour 2 shifts, and that she should have been returned to Tour 2 permanently.

On August 2, 2016, USPS solicited applications for two open SDO positions, one on the Tour 2 shift and the other[5] partially on Tour 2 and partially on Tour 3. Hargis applied for both positions, but was not selected for an interview. David Dunning, the Manager in Plant Support, was the Selecting Official for both positions, and a committee

---

[5] The regular hours for this position were 12:00 noon to 10:30 p.m., Monday through Friday.

was formed to review applications. Michaeal Sralik, the senior MDO, chaired the committee, and Jay Nuzum and Heidi Meyers, both Operations Support Specialists, were the other committee members. According to the committee, they rejected Hargis's application because she failed to address and answer certain questions adequately on the application. Hargis claims she was the most qualified person for both open positions and that her application was not deficient in any regard.

In June 2016, while Hargis was serving her temporary detail as Acting Supervisor of Customer Service, Stephen Prince, the Manager of Customer Service Operations, denied Hargis's requests for annual leave on June 3 and 4. On June 23, 2016, after Hargis returned to her permanent SDO position on the split shift, she requested annual leave for June 25, 2016, and Abbott, the Tour 3 MDO, denied that request. Her other requests for annual leave on June 10, 24, and 27-30 were approved. Sometime in late June or early July, Hargis complained to Cook about the denials of her annual leave requests.

On August 3, 2016, Hargis emailed Edward Newman, who served as acting MDO on Tour 2 and Tour 3 on an as-needed basis, and told him she would be leaving work early the next day for a doctor's appointment. Newman construed the email as a request for sick leave and denied the request. He explained to Hargis that "[t]his [was] not the appropriate way to request leave for an appointment. [A] leave slip should be given to one of the MDOs in person so the leave can be scheduled and approved in advance." Newman Aff., ECF No. 47-3, Page ID 252. Abbott approved Hargis's later requests for sick leave on September 13, 29, and 30.

On August 16, 2016, Hargis submitted a request for annual leave from September 6 through 11, and Abbott denied that request. Hargis also separately requested annual leave for September 10 and 17 so that she could attend football games. Newman reviewed the requests and denied Hargis's request for leave on September 10 but approved her request for leave on September 17.

Hargis was never terminated or demoted, and she never received a reduction in pay or benefits. Although Hargis complained that her split shift schedule and Cook's management decisions prevented her from working overtime hours, it is undisputed that on June 24, 2016, Hargis told Cook and Newman that she was restricted to working eight hours each day and forty hours each week.

Hargis brought this action against USPS asserting claims against USPS for sexual orientation discrimination and retaliation in violation of Title VII, 42 U.S.C. §§ 2000e-2(a), 2000e-3(a). She also asserted claims against Cook, personally, for intentional infliction of emotional distress and negligent infliction of emotional distress. Brennan moved to dismiss Hargis's discrimination and emotional distress claims, and, on October 17, 2017, the Court granted that motion. Mem. and Order, ECF No. 25. Brennan now moves for summary judgment on Hargis's only remaining claim—for retaliation under Title VII.

## STANDARD OF REVIEW

"Summary judgment is appropriate when, construing the evidence most favorably to the nonmoving party, there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law." *Crozier v. Wint,* 736 F.3d 1134, 1136 (8th Cir. 2013) (citing Fed. R. Civ. P. 56(c)). "Summary Judgment is not disfavored and is designed for every action." *Briscoe v. Cty. of St. Louis*, 690 F.3d 1004, 1011 n.2 (8th Cir.

6

2012) (quoting *Torgerson v. City of Rochester*, 643 F.3d 1031, 1042 (8th Cir. 2011) (en banc) *cert. denied*, 132 S. Ct. 513 (2011)) (internal quotation marks omitted).  In reviewing a motion for summary judgment, the Court will view "all facts and mak[e] all reasonable inferences favorable to the nonmovant."  *Gen. Mills Operations, LLC v. Five Star Custom Foods, Ltd.,* 703 F.3d 1104, 1107 (8th Cir. 2013).  "[W]here the nonmoving party will bear the burden of proof at trial on a dispositive issue . . . Rule 56(e) permits a proper summary judgment motion to be opposed by any of the kinds of evidentiary materials listed in Rule 56(c), except the mere pleadings themselves."  *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986).  The moving party need not negate the nonmoving party's claims by showing "the absence of a genuine issue of material fact."  *Id.* at 325.  Instead, "the burden on the moving party may be discharged by 'showing' . . . that there is an absence of evidence to support the nonmoving party's case."  *Id.*

In response to the movant's showing, the nonmoving party's burden is to produce specific facts demonstrating "'a genuine issue of material fact' such that [its] claim should proceed to trial."  *Nitro Distrib., Inc. v. Alticor, Inc.*, 565 F.3d 417, 422 (8th Cir. 2009) (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986)).  The nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts, and must come forward with specific facts showing that there is a genuine issue for trial."  *Briscoe,* 690 F.3d at 1011 (quoting *Torgerson*, 643 F.3d at 1042) (internal quotation marks omitted).  "'[T]he mere existence of some alleged factual dispute between the parties'" will not defeat an otherwise properly supported motion for summary judgment.  *Quinn v. St. Louis Cty.*, 653 F.3d 745, 751 (8th Cir. 2011) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986)).

In other words, in deciding "a motion for summary judgment, facts must be viewed in the light most favorable to the nonmoving party only if there is a genuine dispute as to those facts." *Guimaraes v. SuperValu, Inc.*, 674 F.3d 962, 972 (8th Cir. 2012) (quoting *Torgerson*, 643 F.3d at 1042) (internal quotation marks omitted). Otherwise, where the Court finds that "the record taken as a whole could not lead a rational trier of fact to find for the non-moving party," there is no "genuine issue for trial" and summary judgment is appropriate. *Torgerson*, 643 F.3d at 1042 (quoting *Ricci v. DeStefano*, 557 U.S. 557, 586 (2009)) (internal quotation marks omitted).

## DISCUSSION

Hargis asks the Court to first "review the decision in *Perez v. U.S. Postal Service*, 76 F. Supp. 3d 1168 (W.D. Wash 2015)[,]" and "submits that, at a minimum, a trial is warranted to establish whether" Cook should be held in contempt for violating the order and injunction issued in that case. Pl.'s Br., ECF No. 51, Page ID 463-64. The Court finds Hargis is not entitled to a trial in this Court on these grounds and will proceed to consider whether Brennan is entitled to summary judgment on Hargis's Title VII retaliation claim. *Klett v. Pim*, 965 F.2d 587, 591 (8th Cir. 1992) ("The plain meaning of [18 U.S.C. § 401] prevents a federal court from imposing a sanction for contempt of another court's injunction.").

"Title VII forbids an employer from 'discriminat[ing] against any of his employees . . . because he has opposed any practice made an unlawful employment practice by this subchapter, or because he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this subchapter.'" *Liles v. C.S. McCrossan, Inc.*, 851 F.3d 810, 818 (8th Cir. 2017) (quoting 42 U.S.C. § 2000e-3(a)).

"To survive a motion for summary judgment on a [Title VII] retaliation claim a plaintiff must offer direct evidence[6] of retaliation or create an inference of retaliation under the *McDonnell Douglas* burden-shifting framework." *Donathan v. Oakley Grain, Inc.*, 861 F.3d 735, 739 (8th Cir. 2017) (quoting *Hutton v. Maynard*, 812 F.3d 679, 683 (8th Cir. 2016)). Under that framework, "the plaintiff bears the initial burden to establish a *prima facie* case." *Donathan*, 861 F.3d at 740. "[T]he burden then shifts to the employer to articulate a legitimate, non-retaliatory reason for the adverse employment action." *Id.* (citing *Torgerson*, 643 F.3d at 1046). "If the employer articulates a legitimate reason for the adverse employment action, the plaintiff may create a triable question as to retaliation by showing the employer's articulated reason was not the true reason for the adverse action," *i.e.*, the employer's articulated reason for the adverse employment action was a pretext for unlawful retaliation. *Id.*

"To establish a prima facie case of retaliation, [Hargis] must show (1) she engaged in protected conduct, (2) she suffered a materially adverse employment act, and (3) the adverse act was causally linked to the protected conduct." *Bunch v. Univ. of Ark. Bd. of Trs.*, 863 F.3d 1062, 1069 (8th Cir. 2017) (quoting *Guimaraes v. SuperValu, Inc.*, 674 F.3d 962, 978 (8th Cir. 2012)).

The parties agree Hargis engaged in protected conduct by filing an Information for Pre-Complaint Counseling on January 23, 2016; by filing a formal complaint with the EEOO on April 27, 2016; and by filing a supplement to her complaint on August 29, 2016.[7]

---

[6] Hargis does not argue that there is any direct evidence of retaliation.

[7] Hargis also asserted, in her statement of facts, that in August 2015 she complained directly to Cook "about the hostile work environment and the workplace harassment she was experiencing." Pl.'s Br.,

9

Brenan argues,[8] and the Court finds, however, that Hargis failed to adequately establish, with the evidence in the record, that the employment actions or decisions she complained of were both materially adverse and causally linked to her protected conduct. She has, therefore, failed to establish a prima facie case of Title VII retaliation.

An "adverse employment action is action that 'might have dissuaded a reasonable worker from making or supporting a charge of discrimination.'" *AuBuchon v. Geitner*, 743 F.3d 638, 643-44 (8th Cir. 2014) (quoting *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 68 (2006)). Under this standard, the "employment action must be material, not trivial[,]" *Id.* at 644, and "[t]o avoid the triviality pitfall, the retaliation must produce some 'injury or harm[,]'" *AuBuchon*, 743 F.3d at 644 (quoting *Littleton v. Pilot Travel Ctrs.*, 568 F.3d 641, 644 (8th Cir. 2009)). Thus, "[c]ontext matters." *Burlington N.*, 548 U.S. at 69. Title VII is not a "civility code for the American workplace[,]" and, "[r]eporting discriminatory behavior 'cannot immunize [an] employee from those petty slights or minor annoyances that often take place at work and that all employees experience." *Id.* at 68.

With respect to causation, "Title VII retaliation claims must be proved according to traditional principles of but-for causation[.]" *Univ. of Tex. Sw. Med. Ctr. v. Nassar*, 570

---

ECF No. 51, Page ID 457. The underlying evidence Hargis cited, however, does not support this statement of fact. See *Id.* (citing Hargis Dep., ECF No. 52-1, Page ID 489, 60:10-61:12, Page ID 508, 121:11-23); *Id.* (citing Hargis Aff. ¶ 6, ECF No. 52-2, Page ID 545). Accordingly, the Court will disregard Hargis's proffered statement of fact that she complained to Cook of a hostile work environment and workplace harassment in August 2015. In her Affidavit, Hargis also stated that she filed complaints with the EEOO on August 22, 2012, and July 11, 2013. Hargis Aff. ¶ 8, ECF No. 52-2, Page ID 545. Hargis's brief does not cite these protected activities as the basis for her retaliation claim, they occurred several years prior to the employment decisions she complains of in this case, and they occurred before Cook began working at USPS in Omaha. Thus, the Court will not evaluate whether these protected activities are a basis for Hargis's retaliation claim. Hargis provided no other facts regarding any protected conduct or activity.

[8] Brennan also argues that Hargis failed to show pretext. Def.'s Br., ECF No. 48, Page ID 433-445. The Court will not address this issue because Hargis has not established a prima facie case.

U.S. 338, 360 (2013). "This requires proof that the unlawful retaliation would not have occurred in the absence of the alleged wrongful action or actions of the employer." *Id.*

**Schedule Change**

The primary employment action Hargis claims to be retaliatory was Cook's decision to reassign Hargis from Tour 2 to the Tour 2-Tour 3 split shift. Assuming, without deciding, that this decision constitutes a materially adverse employment action,[9] the evidence does not support a but-for causal link between this decision and Hargis's protected conduct.

Hargis cannot establish causation with respect to this employment action because the evidence shows Cook decided to reassign Hargis to the split shift before Hargis contacted the EEOO. Hargis testified at her deposition that Cook first told Hargis she was going to be reassigned to the split shift in November 2015. Hargis Dep., ECF No. 47-7, Page ID 481, 489-90, pp. 40 & 60-61. They discussed the reassignment again on January 15, 2016, and Cook repeated her intention to reassign Hargis to the split shift. Hargis first contacted the EEOO on January 23, 2016. At her deposition, Hargis was specifically asked, "[s]o *after* you were told you were going to be moved to the split shift, you filed an EEO; correct?" *Id.* at 490 (emphasis added). Hargis answered, "[y]ep. Yes."

---

[9] Changes to an employee's work schedule that do not result in any "material disadvantage" do not "meet the significant harm standard set forth in *Burlington Northern*." *Recio v. Creighton Univ.*, 521 F.3d 934, 940 (8th Cir. 2008). It is Hargis's position that assigning her the split shift was a materially adverse employment action because it affected her childcare arrangements on the days she worked Tour 3. Because the Court finds Hargis failed to establish the causation element of a prima facie case, it is unnecessary to determine whether the schedule change at issue in this case constitutes a materially adverse employment action in this context. *See generally Burlington N.*, 548 U.S. at 69 ("A schedule change in an employee's work schedule may make little difference to many workers, but may matter enormously to a young mother with school-age children.").

*Id.* Based on this evidence, Hargis cannot establish that her protected conduct was the but-for cause of Cook's decision to reassign Hargis to the split shift.

Hargis contends there is sufficient evidence of causation because Cook's decision was not final until February 12, 2016, when Hargis received Cook's letter detailing the reassignment and postponing its effective date. This argument lacks merit because it is undisputed that Cook not only contemplated but intended to reassign Hargis to the split shift months before Hargis contacted the EEOO. *Brown v. Diversified Distrib. Sys, LLC*, 801 F.3d 901, 908 (8th Cir. 2015) (finding no causal connection between an employment decision and an employee's protected conduct where the decision was contemplated prior to the protected conduct) (citing *Clark Cty. Sch. Dist. v. Breeden*, 532 U.S. 268, 272 (2001)). Thus, even if Cook's decision only became final on February 12, 2016, that does not establish a causal link. *Breeden*, 532 U.S. at 272 ("[P]roceeding along lines previously contemplated, though not yet definitively determined, is no evidence whatever of causality.").

Further, the fact that Cook also reassigned Koman Amegbeto—an SDO who had not engaged in any protected conduct—to Tour 3 is evidence that suggests Hargis's protected conduct was not the but-for cause of Cook's decision to reassign Hargis to the split shift. *Fercello v. Cty. of Ramsey*, 612 F.3d 1069, 1082 (8th Cir. 2010). Thus, based on the undisputed evidence, Hargis has failed to establish a causal link between Cook's reassignment decision and Hargis's protected conduct.

Hargis also claims the denials of her post-reassignment requests to be permanently returned to Tour 2 and to cover certain unfilled Tour 2 shifts were retaliatory. Because the Court finds that Cook's initial decision to reassign Hargis to the split shift

was not retaliatory, it is not necessary to also evaluate whether the denials of Hargis's subsequent, repeated requests to be permanently returned to Tour 2 were separately retaliatory. The Court also finds that the denials of Hargis's requests to cover certain unfilled Tour 2 shifts were neither materially adverse or causally linked to her protected conduct.

### Application for Open Tour 2 Positions

Hargis claims USPS retaliated against her by rejecting her applications for the Tour 2 SDO positions that came open in August 2016. The Court finds she failed to provide sufficient evidence of a causal link between her protected conduct and the rejection of her applications.

Hargis provided no evidence that David Dunning, the Selecting Official for both positions, or Michael Sralik, Jay Nuzum, and Heidi Meyers, the selection committee members, knew Hargis had engaged in any protected activity. *Jackson v. United Parcel Serv.*, 548 F.3d 1137, 1143 (8th Cir. 2008) ("A causal link does not exist if the [decision-maker] is not aware of the employee's statutorily protected activity."). In her statement of facts, Hargis states "all the plant managers knew that [Hargis] engaged in EEO activity and in fact, she was told so by [George] Jarret." Pl.'s Br., ECF No. 51, Page ID 456 (citing Hargis Dep., ECF No. 52-2, Page ID 498-502; Hargis Aff. ¶¶ 39, 42, 47, 49, ECF No. 52-5, Page ID 550-52. The cited evidence does not support this statement of fact even when it is viewed in Hargis's favor and when reasonable inferences are given. Nowhere in Hargis's deposition testimony or in her affidavit does she claim Jarrett told her every plant manager was aware of her contact with the EEOO, let alone that Dunning and the committee members, specifically, were aware. She only stated that Jarrett told her Cook

directed him not to assign Hargis additional Tour 2 shifts. *Id.* Thus, the evidence does not show that all, or any, of the individuals who were involved in the decision to reject Hargis's applications knew Hargis had engaged in protected activity. *Jackson*, 548 F.3d at 1143. Even if the evidence did establish that these individuals had such knowledge, that fact, on its own, would not be sufficient to show a causal connection, and Hargis provided no other evidence supporting her claim that her applications were rejected because she previously engaged in protected conduct. *Cf. Tramp v. Associated Underwriters, Inc.*, 768 F.3d 793, 805 (8th Cir. 2014) (citing *Nyrop v. Indep. Sch. Dist. No. 11*, 616 F.3d 728, 736 (8th Cir. 2010)).

Although Cook was aware of Hargis's protected activity by the time her applications were rejected, and Hargis alleged Cook directed Dunning and the committee to reject Hargis's applications, Hargis testified at her deposition that she had no evidence to support her allegation that Cook was involved in the decision to reject her applications. Hargis Dep., ECF No. 52-1, Page ID 515. Hargis has, therefore, failed to provide sufficient evidence of a but-for causal connection between her protected conduct and the rejection of her applications for the open Tour 2 SDO positions.

### Leave Requests

Hargis also claims the denials of her leave requests were retaliatory. However, she has not demonstrated that these denials, whether considered individually or cumulatively, amounted to a materially adverse employment action.

As the Supreme Court emphasized in *Burlington*, "[c]ontext matters[,]" 548 U.S. at 69, and while Hargis referred to a number occasions where her leave requests were denied, she provided no context or evidence upon which a reasonable finder of fact could

conclude that such denials amounted to something more than "those petty slights or minor annoyances that often take place at work and that all employees experience." *Id.* at 68. Hargis's leave requests were not categorically denied. Several of her leave requests were granted, and she has not shown that the denials produced any meaningful harm or injury. *AuBuchon*, 743 F.3d at 644. Thus, the Court finds that the denials of Hargis's leave requests do not constitute materially adverse employment actions.

## CONCLUSION

Hargis failed to provide sufficient evidence to support a prima facie case of Title VII retaliation, and Brennan is, therefore, entitled to judgment as a matter of law. Accordingly,

IT IS ORDERED:

1. The Motion for Summary Judgment, ECF No. 46, filed by Defendant Megan Brennan, the United States Postmaster General, is granted;

2. The Motion to Strike, ECF No. 55, filed by Defendant Megan Brennan, is denied as moot;

3. This action is dismissed, with prejudice; and

4. A separate judgment will be entered.


Dated this 28th day of November, 2018.

BY THE COURT:

s/Laurie Smith Camp
United States District Judge